## McDowell & Peck *v.* General Mutual Insurance Company of New York.

It is not competent for a party to an action to discredit his own witness, unless, at least, an opportunity has been offered to the witness to explain anything which he may have said inconsistent with his testimony.

APPEAL from the Fourth District Court of New Orleans, *Reynolds,* J. *Elmore & King,* for plaintiffs. *Briggs,* for defendant and appellant.

BUCHANAN, J. This is a suit upon a policy of insurance on goods shipped at New Orleans on board the schooner Maria, bound to the Brazos river, and alleged to have been lost by the perils of the sea, on the voyage insured. The defendants specially deny that the schooner was lost by perils insured against, and allege that she was wrecked in attempting to cross the bar at her port of destination without the assistance of the pilot of said port. Defendant further alleges, that plaintiffs well knew when they effected insurance on said vessel,

that the taking of a pilot was a warranty which was incident to the risk, and
that no insurance could be effected in the city of New Orleans on vessels freed
from this condition.

The case was tried by a jury, who found for plaintiffs, and defendants have
appealed.

The testimony of witnesses offered in the court below by the defendants, as
to the alleged attempt of the Maria to cross the bar of Brazos river without a
pilot was as follows:

*James Miller*, by occupation a sailor, was taking the pilot, *Lyons*, on board
a brig lying off the bar of Brazos river, when the schooner Maria came off the
bar. After putting the pilot on board the brig, witness beat up to the Maria
and hailed her, asking if she wanted a pilot. Thought the reply was, asking
the price of pilotage. Witness answered, it was three dollars per foot. Did
not observe at the time any signal for a pilot—but about ten minutes after-
wards, observed a signal for a pilot—put the pilot boat about, went to the brig,
took off the pilot and started for the Maria—but before the pilot boat could
reach her, she was in the breakers, and witness could not get to her without
risking the pilot boat.

*Samuel C. Lyon*, by occupation branch pilot at the mouth of the Brazos
river. The schooner Maria came off the bar of that river. Witness was at
the time on board a brig outside the bar. Soon after he got on board the brig,
witness observed a signal on board the Maria for a pilot, and ordered the pilot
boat to come alongside the brig, which she did, and witness got on board and
started for the Maria. The Maria at this time was a little to the southward of
the channel, and close in to the breakers. She bore away and stood for the
mouth of the river, but before witness reached her, she was in the breakers.

*Christian Miller*, was master of the schooner Maria on the voyage when she
was lost, at 10 A. M. April 30th, 1850; made the mouth of the Brazos river.
Hove the vessel to for a pilot, witness at the same time seeing the pilot boat
making for the Maria. When within hailing distance, the pilot boat hailed the
schooner, and asked if they wanted a pilot. Witness answered yes—what is .
the pilotage? They hailed again from the pilot boat, but witness could not hear
distinctly what they said; but supposed they repeated their question, and he
returned the same answer. The pilot boat then bore away before the wind
and went on the opposite tack; and as it is customary on the bars of Texas
for pilot boats to go in first, and for vessels to follow, witness bore away after
the pilot boat and followed it for about half an hour, but not keeping up with
the pilot boat, set his signal for him to wait, but he not waiting and the schoon-
er not getting any farther off from the shore on this tack, witness put the
schooner about and stood on the opposite tack. By putting the schooner about,
she dropped astern, and was in three fathoms water before she got head way,
and whilst standing on this tack, she not being able to clear the south breakers
and her anchors and chains not being able to hold her, witness kept her away
and attempted to cross the bar, this being the only alternative, either to cross
the bar, or drift on the north or south breakers. The wind dying away, the
schooner lost her steerage way, and the current running very strong out of the
river swept her on the south-west point.

*Robert Norris*, was seaman on the schooner Maria on the voyage when she
was wrecked. When the schooner Maria approached the bar, she was hove to
and a signal was made for a pilot. The pilot boat came and asked the captain

3

McDowell
v.
G. M. Ins. Co.

of the Maria if he wanted a pilot. The captain answered yes; the pilot boat then went away, and the schooner followed her, but not being able to weather the point, the schooner had to put about. When she was put about she would not stay, but drifted on the bar and was wrecked.

The evidence of these witnesses does not establish the allegation of the answer. They are all consistent with each other, and the true cause of the disaster to the schooner appears to have been that the captain of the Maria misunderstood the manoeuvres of the pilot boat. The witness, *Lyon*, informs us in his deposition, that he was the only pilot at the mouth of the Brazos river. He was on board a brig outside the bar, and the pilot boat was going for him to put him on board the Maria, when the captain of the Maria supposed the pilot was on board the pilot boat, and was leading the way for him over the bar. The defendants offered a protest made by the captain of the Maria for the purpose of contradicting his testimony, which was objected to, on the ground that it was not competent for them to discredit their own witness, unless, at least, an opportunity had been offered him to explain anything that he might have said or written which conflicted with his deposition. The objection was sustained by the court below, and the defendants reserved a bill of exceptions to this ruling. We are of opinion that the District Court properly rejected this document. 2 Philips on Evidence, page 447. 1 Greenleaf on Evidence, § 462. *Fletcher* v. *Fletcher*, 5 Ann., 408, 409. *Paradise, Laurason & Co.* v. *Sun Mutual Insurance Co.*, 6 Ann. 596.

The fact of the schooner having attempted to cross the bar without a pilot not being proved, it is unnecessary to examine the legal doctrine of unworthiness as resulting from neglect to take a pilot, or how far such a doctrine is modified by the custom of a particular port.

The appellant has prayed for the amendment of the judgment appealed from, by allowing interest. We think that the appellant is entitled to this amendment; the interest to commence running from the time when the loss was demandable, by the terms of the policy, namely, sixty days after the proof of loss. It is therefore adjudged and decreed, that the judgment of the District Court be amended by allowing interest at five per cent. per annum from the 1st of August, 1850, until paid, on the amount of the judgment; that in all other respects the judgment is affirmed, and that appellants pay costs in both courts.